**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

Case No.: 2:21-cv-00946

**MICHAEL FLYNN,**

      Plaintiff,

v.

**NANCY PELOSI**, in her official capacity as
Speaker of the United States House of
Representatives, e*t. al.*,

      Defendants.

_____/

## TIME-SENSITIVE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 6.01, Plaintiff

Lieutenant General (Ret.) Michael Flynn ("General Flynn"), who is a resident of the

Middle District of Florida, seeks the protection of this Court through this Motion for

a temporary restraining order and a preliminary injunction prohibiting Defendants

from enforcing certain subpoenas until the Court can determine the legality of those

subpoenas. Absent swift intervention by the Court, the United States House Select

Committee to Investigate the January 6th Attack on the United States Capitol (the

"Select Committee") will continue to exploit the searing infamy of the Capitol attack

to conceal its abuse of its authority and trample over General Flynn's Constitutional

rights, echoing the darkest days of government overreach driven by unhinged Congressional hysteria more than half a century ago.

General Flynn did not organize, speak at, or actively participate in any rallies or protests in Washington, D.C., on January 6, 2021, and he of course did not participate in the attack on the Capitol that day. Ex. A, Declaration of Michael Flynn ("Flynn Decl.") ¶ 5. Nevertheless, the Select Committee—assuming the role of shadow prosecutor for the January 6 attack and working in parallel with the actual prosecutors at the Department of Justice—has diverted its attention from its important work to target General Flynn for a quasi-prosecution that is either aimless or transparently partisan.

Despite not participating in any public events in Washington on January 6, Defendants have issued General Flynn a sweeping subpoena seeking twenty different categories of documents and a demand that General Flynn appear for a deposition in Washington, D.C. The subpoena demands records of General Flynn's communications about the 2020 election, and seeks to identify the basis for his beliefs and the persons with whom he associated, in addition to contacts with government officials. It thus constitutes a frontal assault on his 1st Amendment rights to freedom of speech, association, and petition.

Moreover, the scope of the subpoena starts in April 2020, divorcing itself from any connection to the 2020 election and its aftermath but tying closely to the point

in time when the Department of Justice under the prior Administration sought to drop its bogus charges against General Flynn, and thus subverting the Presidential pardon that General Flynn subsequently received.

The Subpoena also subsumes within it the same material as a criminal grand jury subpoena into the activities of a political nonprofit organization with which he was briefly affiliated, and thus the documents and testimony seek to subvert General Flynn's 5th Amendment right against compelled self-incrimination.

In addition to other violations of General Flynn's constitutional rights, the Subpoena is wholly defective because it was issued by the Select Committee Chair in violation of the Select Committee's authorizing resolution, which requires him to issue subpoenas in consultation with the ranking minority member of the Select Committee. The Subpoena is also defective because it was not issued for a valid legislative purpose, but rather the partisan harassment of a person because he holds political views the Select Committee dislikes.  Finally, the Subpoena is overbroad and vague, but the Select Committee has refused to confer to clarify it, and thus would effect an unreasonable seizure in violation of the 4th Amendment.

In addition, General Flynn is informed and believes that Defendants have issued or intends to issue a subpoena to his telecommunications provider seeking expansive cell data regarding General Flynn—and possibly his family.

General Flynn requests that the Court preserve the status quo and issue a temporary restraining order that (1) relieves General Flynn of any obligation to appear at a deposition before the Select Committee; (2) relieves General Flynn of any obligation to produce records to the Select Committee; (3) enjoins Defendants from enforcing the challenged subpoenas; and (4) enjoins Defendants from using or disseminating for any purpose any records it may have obtained regarding General Flynn or his family's cell phone data. General Flynn further requests that the Court convert the temporary restraining order into a preliminary injunction following any appropriate briefing and hearing.

Pursuant to Local Rule 3.01(e), General Flynn designates this Motion as time-sensitive because Defendants continue to maintain that General Flynn must appear before the Select Committee for a deposition and that he produce documents forthwith. General Flynn therefore requests a ruling by December 23, 2021.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### INTRODUCTION

Congressional committees do not have boundless authority to engage in investigations, whether for law enforcement purposes or for mere inquisitive pursuit. Instead, Congress's investigatory powers is limited by Congress's Constitutional function: to act as the legislative branch, one of three co-equal branches of government. The Select Committee, however, has run roughshod not only over

4

structural Constitutional principles limiting its authority, but also over General Flynn's Constitutional rights.

As part of its unconstitutional and *ultra vires* investigation, the Select Committee issued a sweeping subpoena to General Flynn, seeking all manner of documents and communications that go well beyond the events of January 6, and instead probe General Flynn's activities, speech, associations, and his Constitutionally protected appeals to government officials. General Flynn is informed and believes that the Select Committee has issued or intends to issue a subpoena to his telecommunications provider seeking expansive cell data regarding General Flynn, and, possibly, his family. The Select Committee's requests are thus a vexatious fishing expedition designed to, at best, seek information with even the most attenuated link to the events of January 6, and, at worst and more likely, seek to punish General Flynn for his political affiliation, beliefs, and advocacy.

General Flynn is likely to prevail on the merits because the Complaint establishes five significant and independent reasons why the subpoenas were issued in violation of law and should not be enforced.

*First,* the Select Committee acted without the authority to issue a subpoena to General Flynn. By a slim, nearly party-line vote, the House passed a resolution authorizing the creation of the Select Committee. Yet, the Defendant Nancy Pelosi ("Speaker Pelosi") failed to comply with the House's own resolution, filling five

committee spots reserved for the Minority Leader's designees with only two Republican members, and appointing only seven from her own party, leaving *four* empty chairs on a thirteen-member Committee. Moreover, speaker Pelosi did not seat any of the nominees referred by the Republican leadership, leaving the Committee without a ranking minority member, whom only the Republicans can choose. Pursuant to the authorizing resolution, the Select Committee Chair cannot issue subpoenas unless he consults with a ranking minority member and, therefore, the subpoena is invalid.

*Second,* even if the Select Committee were lawfully constituted, the congressional request here lacks a legitimate legislative purpose and runs afoul of the separation of powers. Congress's investigative powers are ancillary to its legislative authority. And there is no ascertainable connection between Congress's legislative mandate and the records and information the Select Committee seeks from General Flynn.

*Third,* the Select Committee's efforts threaten General Flynn's 1st Amendment rights of free speech, free association, and the right to petition the government. The Select Committee veered far off course from its stated purpose of investigating January 6 by seeking records from General Flynn regarding his beliefs about the 2020 election, his communications with other private citizens about the election, and his meetings with President Trump and his campaign, regardless of the

subject matter. While Defendants will surely argue that there is some dubious connection between its investigation of January 6 and its legislative mandate, there can no argument that compelling General Flynn to testify and produce documents regarding his personal political beliefs, speech, activities, and associations are proper subjects of Congressional legislation.

*Fourth,* General Flynn's 4th Amendment right to be free from unreasonable search and seizure is threatened by the Select Committee's issuance of a subpoena in violation of its own rules, for an unlawful purpose, and in terms so broad and indefinite that its scope is not discernable. If Defendants have indeed sought comprehensive cell phone data records regarding General Flynn as General Flynn has reason to believe, General Flynn's 4th Amendment rights are further threatened as he has a reasonable expectation of privacy in all of the cell phone data that Defendants may be seeking from General Flynn's telecommunications provider.

**Fifth,** the Select Committee's subpoena to General Flynn violates General Flynn's 5th Amendment Privilege against self-incrimination. In addition to the federal criminal investigation into January 6, which apparently the redundant Select Committee investigation is trying to connect to General Flynn's political activity, the Department of Justice has subpoenaed a political nonprofit with which General Flynn was briefly affiliated as a member of the Board.  The nonprofit was founded and is currently led by Sidney Powell, General Flynn's criminal defense attorney in

2020, and the group advocated on election matters that overlap with the Select Committee's investigation and the specific requests in the Subpoena.[1]

The very act of producing documents in response to the Subpoena could result in acts that are compelled, testimonial, and self-incriminating. Indeed, the same prosecutor who signed the subpoena to the nonprofit is also prosecuting January 6 cases and criminal contempt of Congress charges for witnesses the Select Committee deems insufficiently cooperative. In responding to the subpoena, General Flynn may necessarily admit that certain documents exist, are authentic, and are in his possession. This includes information in the possession of General Flynn and his telecommunications providers indicating the persons with whom he communicated, when he communicated with them in relation to other events, and how frequently he contacted them—evidence the Department of Justice would use to allege a criminal conspiracy. To the extent any such admissions may tend to incriminate General Flynn in the aforementioned criminal action, the Select Committee violates General Flynn's 5th Amendment privilege by compelling such admissions.

General Flynn faces irreparable harm due to imminent violations of General Flynn's Constitutional rights and the Select Committee's flagrant, ongoing abuse of authority. The balance of equities tips in his favor as the need to prevent further

---

[1] *See* Forbes, "Sidney Powell's Fundraising Groups Reportedly Subpoenaed As Part Of Criminal Investigation" (Nov. 30, 2021).

Constitutional violations outweighs any inconvenience a delay would cause the Select Committee, and the public interest favors the preservation of Constitutional rights and the lawful exercise of governmental authority.

General Flynn therefore requests that the Court issue a temporary injunction that preserves the status quo by relieving General Flynn of any obligation to appear at a deposition in Washington, D.C. or produce records to the Select Committee and by enjoining Defendants from enforcing the subpoena it issued to General Flynn or any third-party subpoena seeking General Flynn's cell phone data, or otherwise using any information already received in response to such a subpoena.

## FACTUAL BACKGROUND

General Flynn is a private citizen and a retired Lieutenant General in the United States Army. Ex. A, Flynn Decl. ¶ 3. General Flynn served as the United States National Security Advisor in the Donald J. Trump Administration, and, earlier, as the Director of the Defense Intelligence Agency. *Id.* ¶ 4.

On January 6, 2021, a large group of individuals in Washington, D.C. entered the U.S. Capitol, breached security, and disrupted the counting of Electoral College votes until order was restored. The U.S. Department of Justice has arrested more than 500 individuals in connection with the attack on the Capitol.

On June 28, 2021, Speaker Pelosi introduced H. Res. 503, "Establishing the Select Committee to Investigate the January 6th Attack on the United States

Capitol." Two days later, the House passed H. Res. 503 on a near party-line vote of 222 yeas and 190 nays. Only two Republicans, Rep. Liz Cheney of Wyoming and Rep. Adam Kinzinger of Illinois, voted in favor of H. Res. 503.[2]

H. Res. 503 instructs the Speaker of the House to appoint thirteen members to the Select Committee, five of which "shall be appointed after consultation with the minority leader." Speaker Pelosi appointed Chairman Thompson to serve as Chair of the Select Committee and appointed six additional Democrat members: Representatives Zoe Lofgren, Adam Schiff, Pete Aguilar, Stephanie Murphy, Jamie Raskin, and Elaine Luria. 167 Cong. Rec. H3597 (2021).

House Minority Leader Kevin McCarthy recommended five Republican members to serve on the Select Committee, consistent with H. Res. 503: Rep. Jim Banks, to serve as Ranking Member, and Representatives Rodney Davis, Jim Jordan, Kelly Armstrong, and Troy Nehls to serve as additional minority members.

Speaker Pelosi did not appoint Rep. Banks to serve as Ranking Member, nor did she appoint any other of Minority Leader McCarthy's recommended minority members. Speaker Pelosi publicly acknowledged that her refusal to appoint the members recommended by the Minority Leader was an "unprecedented decision."[3]

---

[2] *See* H.R. 3233 — National Commission to Investigate the January 6 Attack on the United States Capitol Complex Act.

[3] Nancy Pelosi, Speaker, U.S. House of Representatives, Pelosi Statement on Republican Recommendations to Serve on the Select Committee to Investigate the January 6th Attack on the U.S. Capitol (July 21, 2021).

Instead, Speaker Pelosi appointed Representatives Adam Kinzinger and Liz Cheney— the only two Republicans who voted in favor of H. Res. 503—and left four vacancies. *See* 167 Cong. Rec. H3885 (2021).

Without reference to any authority, on September 2, 2021, Chairman Thompson announced in a press release that "he has named Representative Liz Cheney (R-WY) to serve as the Vice Chair of the Select Committee."[4] H. Res. 503 does not mention a vice chair, much less authorize the chair to appoint a vice chair. *See generally* H. Res. 503, 117th Cong. (2021).

The Select Committee's official letterhead indicates that Bennie Thompson is "Chairman" and lists the other members without designation. *See, e.g.*, Ex. C. The Select Committee's website lists its members, including Thompson as Chairman, but no other members receive designation.[5]

H. Res. 503 provides that "[t]he Select Committee may not hold a markup of legislation" and sets forth the purposes of the Select Committee, which are: "[t]o investigate and report to the President and Congress on its findings, conclusions, and recommendations for corrective measures that may include changes in law, policy,

---

[4] *See* Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, Chairman Thompson Announces Representative Cheney as Select Committee Vice Chair (Sept. 2, 2021).

[5] *See* Membership, Select Comm. to Investigate the Jan. 6 Attack on the U.S. Capitol, *available at* https://january6th.house.gov/about/membership (last accessed Dec. 21, 2021).

procedures, rules, or regulations. . . ." H. Res. 503 lists three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary."

Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy, procedures, rules, or regulations that could be taken" (1) "to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to strengthen the security and resilience of the United States and American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

H. Res. 503 provides that "[t]he chair of the Select Committee, *upon consultation with the ranking minority member*, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress." (Emphasis added.) Section

3(b)(1) of H. Res. 8 similarly provides that, "[d]uring the One Hundred Seventeenth Congress, the chair of a standing committee. . . , *upon consultation with the ranking minority member of such committee*, may order the taking of depositions, including pursuant to subpoena, by a member or counsel of such committee." (Emphasis added.)   Because only the House Republicans can identify which member of a committee is the ranking member for their conference,[6] and Speaker Pelosi refused to appoint the ranking member selected by the Republican conference, the Select Committee is operating without a minority ranking member and, thus, Chairman Thompson has not consulted with a ranking minority member before issuing committee subpoenas.

The Select Committee has issued numerous subpoenas seeking the production of documents and compelled testimony from individual witnesses, including more than a dozen former Trump Administration officials.[7] On November 9, 2021, the Select Committee served a subpoena on General Flynn (the "Subpoena") at his residence. Ex. C. The Subpoena is expansive and sweeping. *See id.* at 5-6. The Subpoena directed General Flynn to produce all responsive documents by November 23, 2021 at 10:00 a.m. (less than 15 days from the service of the subpoena) and

---

[6] House GOP, "Conference Rules of the 117th Congress," Rule 14(a)(1).

[7] *See* CNN, "A running list of who has received a subpoena from the House January 6 select committee" (Nov. 29, 2021).

appear for a deposition to provide testimony at 10:00 a.m. on December 6, 2021. *Id.* at 1.

General Flynn retained counsel to assist him with a response to the Select Committee's Subpoena and retained the services of a vendor to collect and process his electronic documents so that they could be preserved, reviewed, and produced to the Select Committee. Ex. B, Declaration of David A. Warrington ¶ 3. Counsel also began a series of discussions with the Select Committee to clarify the scope of the subpoena and the Select Committee's priorities considering the impossibly tight deadlines in its subpoena. *Id.* ¶ 4. Counsel for General Flynn repeatedly raised concerns under the 1st and 5th amendments, as well as privilege issues concerning General Flynn's communications with Ms. Powell. *Id.* ¶ 5. Although the Committee agreed to postpone General Flynn's deposition to December 20, 2021, it would not agree to clarify or prioritize the Subpoena's requests. *Id.* ¶ 6. On December 16, 2021, the Committee announced it would postpone General Flynn's deposition to a date to be determined, but still expected General Flynn to produce documents. *Id.* ¶ 7. On December 17, Counsel for General Flynn reiterated the intractable issues of constitutional rights and privileges that hindered the production of potentially responsive documents (to the extent they could be identified despite the vague and overbroad subpoena demands). *Id.* ¶ 8. Unable to navigate these legal and practical

issues, with the Committee stubbornly refusing to cooperate on any solutions, Commissioner Flynn filed this action to seek the Court's protection.

General Flynn is informed and believes that the Select Committee is obtaining records about various individuals by issuing subpoenas to telecommunications providers. For example, the Select Committee issued a subpoena to Verizon Wireless seeking subscriber information and cell phone data associated with former White House Chief of Staff, Mark Meadows (the "Verizon Subpoena").[8] The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata. The cell phone data requested could include all calls, text messages, and other records of communications associated with that phone number. This data can be used for historic cell site analysis to create a record of a person's movements. Public reports released on December 7, 2021, indicate that the Select Committee has issued subpoenas to collect the phone data of more than 100 individuals.[9]

Supporting General Flynn's decision not to appear for the deposition, Chairman Thompson made a public statement on December 2, 2021, that those who

---

[8] *See* Courthouse News Service, "Mark Meadows sues Jan. 6 committee to block subpoenas" (Dec. 8, 2021).

[9] *See* CNN "Exclusive: January 6 committee casts a wide net with over 100 subpoenas for phone records" (Dec. 7, 2021).

appear before his Select Committee and invoke their Fifth Amendment privilege against self-incrimination are "part and parcel guilty to what occurred."[10]

In September 2021, the Department of Justice obtained a grand jury subpoena for records of Defending the Republic, a nonprofit General Flynn briefly served as a director, which was founded and led by his former criminal defense counsel, Sidney Powell.  The subpoena was signed by an Assistant U.S. Attorney prosecuting matters related to the January 6 Capitol attack as well as contempt of Congress charges against Stephen K. Bannon for not complying with the Select Committee's subpoena.[11]

## ARGUMENT

General Flynn is likely to prevail on his legal challenge to the General Flynn Subpoena and any third-party subpoena to his telecommunications provider seeking his records.

*First,* Speaker Pelosi's failure to appoint members to the Select Committee in accordance with its enabling resolution means that the Select Committee issued the General Flynn Subpoena without proper authority and an injunction is proper.

---

[10] *See* RealClear Politics, "Jan. 6 Committee Chairman Bennie Thompson: If You Plead The Fifth, You're 'Part & Parcel Guilty'" (Dec. 2, 2021).

[11] *See* Washington Post, "Prosecutors Demanded Records of Sidney Powell's Fundraising Groups As Part of Criminal Probe" (Nov. 30, 2021).

Congress's failure to act in accordance with its own rules is judicially cognizable. *Yellin v. United States*, 374 U.S. 109, 114 (1963).

Speaker Pelosi has appointed only nine members of Congress to serve on the Select Committee, not thirteen, and further failed to appoint any members in consultation with the Minority Leader. H. Res. 503 § 2(a), 117th Cong. (2021). Further, Chairman Thompson derives the authority to issue subpoenas solely from § 5(c)(6) of the enabling resolution, and may not order the taking of depositions without consultation with the ranking minority member of the Select Committee. As the Select Committee has no ranking minority member, Chairman Thompson failed to make the requisite consultation before issuing the subpoena that compelled General Flynn to appear for a deposition.

Only injunctive relief can protect General Flynn from the Select Committee unlawfully issuing compulsory process in violation of its own enabling resolution.

***Second,*** the Select Committee exceeded its Constitutional authority by issuing the General Flynn Subpoena without a valid, legislative purpose. Congress has no inherent power to issue subpoenas; its investigative powers are ancillary to its legislative power. *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020). Congress may thus only issue subpoenas that serve a valid legislative purpose. The legislative purpose inquiry analyzes whether a given subpoena, not an investigation as a whole, serves a valid purpose. *Id.* "Congress may not issue a subpoena for

17

the purpose of 'law enforcement,' because 'those powers are assigned under our Constitution to the Executive and the Judiciary.'" *Id.* at 2032 (citation omitted). A desire to "expose for the sake of exposure" cannot sustain a congressional subpoena. *Watkins v. United States*, 354 U.S. 178, 200 (1957).

Instead of identifying any valid end or proposed legislation, the Select Committee has issued public statements explicitly identifying law enforcement and the desire to expose for the sake of exposure as its motivations for subpoenaing General Flynn. Chairman Thomas and Vice-Chair Cheney have reiterated in their public statements that the purpose of their investigation is to ensure "those responsible are held accountable," to "tell[] the complete story of the unprecedented and extraordinary events of January 6th," and to "get answers for the American people about what happened on January 6th." *The Law Enforcement Experience on January 6th: Hearing Before the H. Select Committee to Investigate the January 6th Attack on the United States Capitol*, 117th Cong. (2021) Statement of Elizabeth Cheney, Vice-Chair).[12] The Select Committee's authorizing resolution also fails to identify its legislative purpose. It is vague to the point of meaninglessness, authorizing the Select Committee to "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol, including facts and

---

[12] *See also* Press Release, *Thompson & Cheney Statement on Pentagon Officials' Reported Actions After January 6th* (Sept. 16, 2021); Press Release, *Thompson Statement on Cooperation of Witnesses* (Oct. 14, 2021).

circumstances relating to… entities of the public and private sector as determined relevant by the Select Committee for such investigation." H. Res. 503.

The information sought by the Subpoena—expansive categories of records relating mainly to General Flynn's core 1ˢᵗ Amendment activities (what he believes, why he believes it, who he spoke with, etc.)—do not further a valid legislative purpose but instead only serve the Select Committee's stated purpose of engaging in ad-hoc law enforcement and its unstated purpose of antagonizing its political adversaries.

*Third,* the Subpoena violates General Flynn's rights to engage in free speech, political activity, and free association. These associational and expressive activities are protected by the 1ˢᵗ Amendment, which prohibits the Congress from "abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  The Select Committee's subpoena, directed at General Flynn's political beliefs, statements, communications, associations, and communications with officials, or other private citizens, implicates nearly the full range of core activity protected by the First Amendment, without advancing any valid purpose for which the Committee was created.

For example, the Subpoena compels General Flynn to produce records of his assessment of and communications regarding "the security of election systems," all communications with a law professor and a former North Carolina chief justice

"relating in any way to the fall 2020 election," and all documents and communications relating to any meeting General Flynn had with President Trump or his re-election campaign in January 2021. Warrington Decl., Ex. A. at 5–6. Seven of the nine Select Committee members belong to a political party that opposed the President under whom General Flynn served, and the remaining two have also made clear their disagreement with the former President. The Subpoena is a clear effort to chill the speech of General Flynn, with which the Select Committee Members disagree.

Allowing a partisan and politically hostile select committee of Congress to obtain General Flynn's records and communications relating to his political activities, associations, and speech would work a massive chilling of General Flynn's associational and free speech rights, as well as his right to petition the Executive Branch.

**Fourth,** the Subpoena violates General Flynn's rights under the 4th Amendment. The 4th Amendment guarantees the right to be free from unreasonable searches and seizures of their persons, houses, papers, and effects. It also protects a person's reasonable privacy expectations. *Katz v. United States*, 389 U.S. 347, 351 (1967). The 4th Amendment thus restricts the Select Committee from issuing a subpoena untethered from any valid legislative purpose. *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 196 (1946). A congressional subpoena must be

reasonable. An all-encompassing subpoena for personal, non-official documents about one private citizen's personal political beliefs, communications, and associational activity falls outside the scope of Congress's legitimate legislative power. *See Trump*, 140 S. Ct. at 2040.

The Subpoena seeks documents and communications involving a wide-range of subjects, such as his general thoughts on election security, political strategy regarding campaign messages, and communications about legal challenges involving the 2020 election. It is overly broad with respect both to the timeframe and the subject matters in question. The Subpoena is so broad and indefinite that it exceeds the lawfully authorized purpose of the Select Committee. *See McPhaul v. United States*, 364 U.S. 372, 381 (1960).

Therefore, compelling General Flynn to comply with the Subpoena would violate his 4th Amendment protection against unlawful search and seizure and the Subpoena is therefore invalid and unenforceable. In the event that the Select Committee has issued or intends to issue a subpoena similar in form and content to the Verizon Subpoena regarding General Flynn or his family's records, such a subpoena would also violate General Flynn's 4th Amendment rights as General Flynn has a reasonable expectation of privacy in his personal cell phone or other data such as electronic mail records.

*Fifth,* the Subpoena violates General Flynn's 5th Amendment privilege against compelled self-incrimination. In addition to the testimony compelled by the deposition demand, the Supreme Court has recognized that "[t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced," and that "[c]ompliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control[.]" *Fisher v. United States*, 425 U.S. 391, 410 (1976). Indeed, where the compelled production of documents "involve[s] testimonial self-incrimination," the act of producing such documents privileged under the 5th Amendment. *See United States v. Doe*, 465 U.S. 605, 613 (1984) (footnote omitted). The compelled production of documents may involve testimonial self-incrimination where the "enforcement of the subpoenas would compel [respondent] to admit that the records exist, that they are in his possession, and that they are authentic." *Id.* at 613 n.11.

Compelling General Flynn to testify and produce the records identified in the Subpoena would violate General Flynn's 5th Amendment privilege against self-incrimination to the extent that admissions that certain records exist, that they are in his possession, and that they are authentic may be used as evidence against him in the aforementioned criminal investigation.

*Irreparable Harm & Balance of Equities*

General Flynn will suffer irreparable harm if the Motion is denied and the Select Committee is given license to continue its efforts to enforce the subpoena it issued to General Flynn and collect further records relating to General Flynn from third parties. General Flynn would face a dire dilemma: sacrifice his Constitutional rights in order to comply with an unlawfully issued subpoena; or stand his ground and face criminal prosecution for contempt of Congress.

As a result of the grave irreparable harm that General Flynn would face if the Court allowed the Select Committee to engage in efforts to enforce the subpoena, the balance of equities tip strongly in General Flynn's favor. Even if the Court were to grant General Flynn the requested relief but somehow conclude at a further point in the litigation that the Select Committee acted lawfully in issuing the Subpoena, the harm to Defendants would be minimal. The Select Committee could still seek enforcement of the subpoenas, and would only suffer a limited delay, which is a small price to pay for ensuring that the Select Committee's activities are lawful. As the Select Committee is investigating an event that already took place, which has been abundantly investigated already by the Department of Justice and which unfolded in public view with extensive media coverage, it is difficult to see how the omission or delay of General Flynn's testimony and documents about his personal

beliefs and communications would have a material impact on the Select Committee's investigation.

Finally, the public interest supports granting the Motion. The public has a strong interest in ensuring that the federal government acts in accordance with the Constitution, particularly when partisan members would use the formidable power of Congress to violate the rights of a citizen for political gain, beyond confines of its Constitutional authority and internal rules.

CONCLUSION

For the foregoing reasons, General Flynn respectfully requests that the Court grant the Motion and issue a temporary restraining order that (1) relieves General Flynn of any obligation to appear at a deposition before the Select Committee; (2) relieves General Flynn of any obligation to produce records to the Select Committee; (3) enjoins Defendants from enforcing the challenged subpoenas; and (4) enjoins Defendants from using or disseminating for any purpose any records it may have obtained regarding General Flynn or his family's cell phone data, and then convert the temporary restraining order into a preliminary injunction following appropriate briefing and hearing.

[*continued on following page*]

24

Dated: December 21, 2021                    Respectfully submitted,


/s/ Matthew Sarelson
Matthew Seth Sarelson, Esq.
**DHILLON LAW GROUP INC.**
2100 Ponce de Leon, Suite 1290
Coral Gables, Florida 33134
305-773-1952
msarelson@dhillonlaw.com
Florida Bar No. 888281


David A. Warrington, Esq.                Michael A. Columbo, Esq.
(special admission pending)              (special admission pending)
**DHILLON LAW GROUP INC.**               Jesse Franklin-Murdock, Esq.
2000 Duke Street, Suite 300              (special admission pending)
Alexandria, Virginia 22314               **DHILLON LAW GROUP INC.**
571-400-2120                             177 Post Street, Suite 700
dwarrington@dhillonlaw.com               San Francisco, California 94108
                                         415-433-1700
                                         mcolumbo@dhillonlaw.com
                                         jfranklin-murdock@dhillonlaw.com